**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

KENDARRIUS DANIELS, #218223, :

    Plaintiff, :

vs. : CIVIL ACTION 16-0565-WS-B

JEFFERSON S. DUNN, *et al*., :

    Defendants. :

**REPORT AND RECOMMENDATION**

Plaintiff Kendarrius Daniels, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful review, it is recommended that Defendants' Motion for Summary Judgment be GRANTED. It is further recommended that Plaintiff Kendarrius Daniels' action be dismissed with prejudice.

**I.    Complaint Allegations.**

While imprisoned at Holman Correctional Facility (Holman), Plaintiff Kendarrius Daniels (Daniels) claims that Defendants, Alabama Department of Corrections Commissioner Jefferson Dunn, Warden Cynthia Stewart, Warden Terry Raybon, Warden Phillip Mitchell, Lieutenant Regina Bolar,[1] and Officer Tamekio Roberts,

---

[1]    Regina Bolar is erroneously identified as Regina Bullock in

failed to protect him from being assaulted by another inmate, Heath McCray.[2]  (Doc. 1).

In his complaint, Daniels alleges that on or about October 30, 2016, at approximately 9:30 p.m., while housed on death row in cell P-1, he was holding a hand mirror out of the bars of his cell looking into the hallway.  (Doc. 1 at 4).  According to Daniels, as Inmate Heath McCray (McCray) passed by his cell, "[he] ask[ed] Inmate Heath McCray for a cigarette, [and McCray] then cut [Daniels] across the arm several times with razors wrapped around a tooth brush causing blood to flow from [his] arm."  (*Id*.). Daniels alleges he screamed for help but no officers came to assist him, so he started a fire in his cell to "get the officers attention."  (*Id*.).  Lieutenant Bolar, Sergeant Day, and Officer Roberts arrived to assist; the fire was extinguished, and Daniels was taken to the health care unit and received medical treatment for his cuts.  (*Id*. at 4-5).

Daniels claims that, prior to this incident, he submitted several letters to Defendant Dunn and notified Defendant Wardens Stewart, Raybon, and Mitchell requesting to be moved because his life was in danger at the institution.  (*Id*. at 5).  In his

---

the complaint.

[2]    Joshua Day was dismissed without prejudice from this suit on November 13, 2018, for failure to effect timely service.  (Docs. 36, 37, 38).

complaint, Daniels alleges that Defendants are liable for failing to protect him from the inmate assault occurring on October 30, 2016, for providing inadequate security, and for denying him medical care in violation of the Eighth Amendment. Daniels seeks compensation in the amount of $250,000.00 for his injuries.

Defendants have answered the suit, denying the allegations against them, and filed a special report in support of their position. (Docs. 23, 24). In an Order dated January 3, 2019, the Court converted Defendants' Special Report and Answer into to a Motion for Summary Judgment, explained to the parties the procedure under Federal Rule 56, and afforded the parties an opportunity to respond to the motion by February 4, 2019. (Doc. 39). The Court also directed Daniels to notify the Court if he desired to continue with this litigation. Daniels has filed no response to the Court's Order. Following a careful review of the parties' pleadings, Defendants' motion for summary judgment, and supporting materials, the Court determines that the motion is ripe for consideration.

## II. Summary Judgment Standard.

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); s*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'" (emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F.

Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations

omitted).

The requirement to view the facts in the nonmoving party's

favor extends only to "genuine" disputes over material facts. A

genuine dispute requires more than "some metaphysical doubt as to

material facts." *Garczynski*, 573 F.3d at 1165 (internal citations

omitted). A "mere scintilla" of evidence is insufficient; the

nonmoving party must produce substantial evidence in order to

defeat a motion for summary judgment. *Id.*  In addition, "[t]here

is no burden upon the district court to distill every potential

argument that could be made based upon the materials before it on

summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d

587, 599 (11th Cir. 1995). More importantly, where "opposing

parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment." *Scott v.*

*Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d

686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th

Cir. Aug. 29, 2011) ("In cases where opposing parties tell

different versions of the same events, one of which is blatantly

contradicted by the record—such that no reasonable jury could

believe it—a court should not adopt the contradicted allegations."
(citations omitted) (unpublished)).

## III. Discussion.

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)) (alterations and quotations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834; *Purcell v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety.") (quotation omitted).

In this action, it is undisputed that Daniels set a fire on P-side of death row on October 30, 2016;[3] that Daniels had four cuts on his right forearm;[4] that Lt. Regina Bolar and Sgt. Day escorted Daniels to the health care unit on October 30, 2016 after he set a fire in his cell;[5] that Daniels received treatment for

---

[3]    (Doc. 1 at 4; Doc. 23-1 at 1).

[4]    (Doc. 1 at 4; Doc. 23-1 at 3).

[5]    (Doc. 1 at 4; Doc. 23-1 at 1, 3).

the cuts in the health care unit until the cuts were noted as "healed" on November 4, 2016;[6] that Inmate Heath McCray denied cutting Daniels' arm on October 30, 2016;[7] that Daniels stated he was going to use his crisis cell for his own personal gain;[8] that Officer Tameakio Roberts witnessed Daniels set fire to his cell;[9] that Daniels was found guilty of intentionally creating a security or health hazard by setting the October 30, 2016 fire in his cell.[10]

---

[6]     (Doc. 1 at 4; Doc. 23-1 at 3; Doc. 23-3 at 8, 12, 20).

[7]     (Doc. 23-1 at 2).  Daniels fails to respond to or dispute Defendants' assertion that McCray denies cutting Daniels on October 30, 2016.

[8]     (Doc. 23-3 at 17).  The record indicates that, on September 15, 2016, inmate Daniels was placed in the cell for Mental Health observation alleging that he was going to harm himself because the inmates in segregation were taunting him. (*Id.*) Inmate Daniels alleged that some gang members, who were associated with gang members in Holman's population, had his mother's residence shot up the night before, which was later determined to be false, and he could not deal with the pressure. Daniels was allowed to remain in his crisis cell after the mental health observation period was complete; however, on October 30, 2016, Daniels was informed that he would be transferred back to the segregation unit. (*Id.*) The mental health records indicate that on October 31, 2016, Daniels stated that "[i]f [he] [had] to go back to seg [he'd] kill himself" and that he "want[ed] a [prison] transfer and [was] not leaving the crisis cell until that happens."  (Doc. 23-3 at 17).  He further stated "that he was going to keep using the crisis cell for his own personal gain."  (*Id.*; Doc. 23-3 at 16).  Daniels fails to respond to or dispute these record statements.

[9]     (Doc. 23-2 at 7, 9).  Daniels fails to respond to or dispute that Officer Roberts witnessed Daniels set fire to his cell on October 30, 2016.

[10]    (Doc. 23-2 at 3).

## 1. Failure to Protect.

To establish a claim of failure to protect, Daniels must show that Defendants knew he was at a serious risk of harm and "disregarded the substantial risk by failing to act in an objectively reasonable way to alleviate the risk," and that the defendants "'acted with a state of mind that constituted deliberate indifference.'" *Estate of Owens v. GEO Grp., Inc*., 660 F. App'x 763, 767 (11th Cir. 2016)(citations omitted).

> In this context, deliberate indifference requires: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that amounts to more than mere negligence. *[Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010)]; *see also Ray v. Foltz*, 370 F.3d 1079, 1083 (11th Cir. 2004) ("Deliberate indifference is not the same thing as negligence or carelessness."). Thus, a prison official may have subjective knowledge only if he had both knowledge of specific facts from which an inference of risk of serious harm could be drawn, and he actually drew that inference. *Carter*[ *v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)]. And, therefore, a plaintiff's claim will fail as a matter of law in the absence of actual knowledge of the substantial risk, because to hold otherwise would impermissibly vitiate the subjective component of the analysis. *See Farmer*, 511 U.S. at 837-38.

*Id.*

Taking Daniels' version of the facts as true, the evidence shows that while Daniels notified Defendants of a fear for his life, he did not specify any actual threat of harm or identify any inmate he feared so as to sufficiently place Defendants on notice

of a serious threat to his safety.[11]  Nevertheless, Defendants

reasonably acted to protect Daniels by placing him in a single

cell on death row.[12]  *See Daniels v. Baldwin Cnty. Corrs. Ctr.,*

*Rodriguez v. Sec'y Dept. of Corrs.,* 508 F.3d 611, 617-18 (11th

Cir. 2007)(citation omitted) (Officers may avoid Eighth Amendment

---

[11]    "Whether a prison official had the requisite knowledge of a
substantial risk is a question of fact subject to demonstration in
the usual ways, including inference from circumstantial evidence."
*Hale*, 50 F.3d at 1583 (quoting *Farmer*, 511 U.S. at 842); *see Brown
v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (Plaintiff mush
show "a strong likelihood, rather than a mere possibility [of harm]
before a guard's failure to act can constitute deliberate
indifference.") (internal quotation marks omitted); *Carter v.
Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("[B]efore a
defendant's awareness rises to a sufficient level of culpability,
there must be much more than mere awareness of an inmate's
generally problematic nature."); *Chatham v. Adcock*, 334 F. App'x
281, 293-94 (11th Cir. 2009) (*per curiam*) (No subjective knowledge
or deliberate indifference shown where plaintiff failed to
identify a specific "serious threat" reported to defendant
officers, despite claims that he was repeatedly threatened prior
to being assaulted.); *Lavender v. Kearney,* 206 F. App'x 860, 863-
64 (11th Cir. 2006) ("General knowledge about an inmate's violent
tendencies, without more specific information about the risk, does
not constitute deliberate indifference."); *Prater v. Dahm*, 89 F.3d
538 (8th Cir.1996) (Plaintiff did not allege facts from which an
inference of substantial harm could be made; plaintiff alleged
only that fellow inmate had made threats against him.).

[12]    Daniels affirms in his complaint that he "was placed on death
row P-1 cell" after he notified the defendants he feared for his
safety.  (Doc. 1 at 5-6).  The record confirms that Daniels was
placed in cell P-1, a single-inmate cell, on September 15, 2016,
for mental health observation after alleging that he was going to
harm himself because inmates were taunting him.  (Docs. 23-3 at
12; 23-7 at 1; 23-8 at 1).  After the observation period was
complete, Daniels requested to remain in the single cell "to avoid
confrontation with segregation inmates," and his request was
granted.  (Doc. 23-7 at 2; Doc. 23-8 at 2).

liability by showing: "(1) 'that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;' (2) 'that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;' or (3) that 'they responded reasonably to the risk, even if the harm ultimately was not averted.'" Furthermore, the record reflects that prior to the October 30th incident, Daniels did not fear harm from Inmate McCray, and he does not allege that he had notified Defendants of any problems with Inmate McCray prior to the incident.

In his Complaint, Daniels states that he was hanging his arm out of the cell on October 30, 2016. Daniels admits he could see down outside his cell through the hand-held mirror. With knowledge that McCray was walking toward his cell, Daniels continued to hang his arm outside the cell bars and affirms that he reached for Inmate McCray and asked him for a cigarette as McCray passed by his cell. (Doc. 23-1 at 1). Such actions certainly would suggest that Daniels did not anticipate or fear an attack by McCray; thus, neither could Defendants have anticipated such an attack.

Accordingly, the record lacks sufficient evidence to support Daniels' allegations and to lead a reasonable trier of fact to find that Defendants were notified of a specific threat to Daniels prior to the alleged assault and disregarded the risk of harm with

conduct that was more than negligence.  Consequently, Daniels has failed to establish Defendants acted with deliberate indifference and thus has failed to carry his burden to overcome summary judgment.

## 2. Failure to Provide Adequate Security.

Similarly, Daniels' vague and conclusory allegation that Defendants failed to provide adequate security also fails.  As previously stated, to satisfy the first prong of a deliberate indifference claim, Daniels must demonstrate "an objectively substantial risk of serious harm." *Harrison v. Culliver*, 745 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation omitted). This objective risk may be established by alleging facts which show the existence of "an excessive risk of inmate-on-inmate violence at" a prison, an atmosphere where "violence and terror reign" or that there is a "constant threat of violence." *Purcell*, 400 F.3d at 1320.  However, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." *Id*. Daniels has not shown that Defendants understaffed the prison or failed to provide proper security posts in Housing Unit P with knowledge that it created a substantial risk of serious harm and, yet, chose to disregard such risk.[13]  Consequently, Daniels' claim of inadequate security fails.

---

[13]    Contrary to Daniels' allegations, the record indicates that

### 3. Denial or Delay of Medical Care.

Likewise, Daniels' claim of denial or delay in medical care also fails. To establish a claim of denial of medical care, Daniels again must show the objective and subjective elements of deliberate indifference. To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 n. 9 (2002)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate

---

an officer was posted and providing security at the time of the alleged incident. (Doc. 23-6 at 1-2). It was this officer who notified a supervisor of the fire set by Daniels and the fire was extinguished in approximately five minutes of detection. (*Id.*). Additionally, there was a Cubical Operator monitoring P-side at the time of the incident. (Doc. 23-1 at 1).

"deliberate indifference" to a serious medical need. *Farrow*, 320

F.3d at 1243. "Deliberate indifference" entails more than mere

negligence. *Estelle*, 429 U.S. at 106; *Farmer v. Brennan*, 511 U.S.

825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

> The Supreme Court clarified the "deliberate
> indifference" standard in *Farmer* by holding that a
> prison official cannot be found deliberately indifferent
> under the Eighth Amendment "unless the official *knows of*
> and *disregards an excessive risk to inmate health or*
> *safety;* the official must both be aware of facts from
> which the inference could be drawn that a substantial
> risk of serious harm exists, and he must also draw the
> inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. 1970
> (emphasis added). In interpreting *Farmer* and *Estelle*,
> this Court explained in *McElligott* that "deliberate
> indifference has three components: (1) subjective
> knowledge of a risk of serious harm; (2) disregard of
> that risk; (3) by conduct that is more than mere
> negligence." *McElligott*, 182 F.3d at 1255; *Taylor*, 221
> F.3d at 1258 (stating that defendant must have
> subjective awareness of an "objectively serious need"
> and that his response must constitute "an objectively
> insufficient response to that need").

*Farrow*, 320 F.3d at 1245-46.

"Delay in access to medical attention can violate the Eighth

Amendment . . . when it is tantamount to unnecessary and wanton

infliction of pain." *Hill*, 40 F.3d at 1187 (internal citations and

quotation marks omitted). "Cases stating a constitutional claim

for immediate or emergency medical attention have concerned

medical needs that are obvious even to a layperson because they

involve life-threatening conditions or situations where it is

apparent that delay would detrimentally exacerbate the medical

problem." *Id*.

The "seriousness" of an inmate's medical needs also may
be decided by reference to the *effect* of delay in
treatment. Where the delay results in an inmate's
suffering "a life-long handicap or permanent loss, the
medical need is considered serious." An inmate who
complains that delay in medical treatment rose to a
constitutional violation must place verifying medical
evidence in the record to establish the detrimental
effect of delay in medical treatment to succeed.
Further, we have held that "[t]he tolerable length of
delay in providing medical attention depends on the
*nature* of the medical need and the *reason* for the delay."
Consequently, delay in medical treatment must be
interpreted in the context of the seriousness of the
medical need, deciding whether the delay worsened the
medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1188-89 (internal citations omitted) (footnotes

omitted).    Daniels, however, fails to establish deliberate

indifference to a serious medical need.

According to Daniels, he was cut by Inmate McCray at

approximately 9:30 p.m. on October 30, 2016.  He claims that after

being cut, he screamed for help but no officer(s) came to assist

him, so he intentionally "set a fire to get the officers'

attention."  (Doc. 1 at 4).  The record evidences, and Daniels

does not dispute, that officers responded to the fire in his cell

at approximately 9:35 p.m.  After the fire was extinguished, the

parties contend that Daniels was taken to the healthcare unit and

received treatment for his cuts.  The medical records show that at

approximately 9:45 p.m., Daniels was evaluated for four cuts on

his right forearm measuring 8 cm, 6 cm, 5 cm, and 4 cm,

respectively. (Doc. 23-1 at 3).  The wounds were ordered to be

cleaned daily until healed (Doc. 23-3 at 20) and were "healed" five days later, on November 4, 2016. (*Id*.). Such facts fail to indicate an objectively serious injury, and the record is void of evidence that the defendants were even aware of the cuts on Daniels arm until they arrived to put out the fire.[14] Additionally, Daniels puts forth no evidence that the brief delay in receipt of medical treatment worsened his condition in any way; therefore, the fifteen-minute delay does not rise to a constitutional level. *Shapley v. Nevada Bd. of State Prison Comm'rs.*, 766 F.2d 404, 407 (9th Cir. 1985) (noting that where there is a "'mere delay . . .' a prisoner can make 'no claim for deliberate medical indifference unless the denial was harmful.'") (citation omitted).

**4. No Supervisory Liability.**

The claims asserted against Jefferson Dunn, Cynthia Stewart, Terry Raybon, and Phillip Mitchell are solely based on their roles as supervisory officials and are, thus, rooted in the theory of *respondeat superior* and are not cognizable in a § 1983 action. *Edwards v. Ala. Dep't of Corrs.*, 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . ."); *see also Duff v. Steub*, 378 F.

---

[14]   The record confirms, as part of the incident report and disciplinary proceedings regarding the setting of the fire, that Cubicle Officer Seglinda Harris did not see Inmate McCray cut Daniels, and Officer Roberts specifically stated that he did not hear Daniels scream for help on October 30, 2016. (Doc. 23-1 at 1; Doc. 23-2 at 9).

App'x 868 (11th Cir. 2010) ("Deliberate indifference can be based on the defendant's personal participation in the allegedly unconstitutional conduct or on the defendant's actions as a supervisor."). To establish a claim of supervisory liability under § 1983, Daniels must show that the supervisor personally participated in the alleged unconstitutional conduct or show a causal connection between the actions of the supervising official and the alleged constitutional deprivation. *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003).

The record shows that Defendants placed Daniels in a single man cell after he complained of fearing for his safety. Given that it was Daniels who saw the P-side runner Inmate McCray walking down the housing unit, and Daniels who had his arm reached beyond the cell bars, and Daniels who admits asking McCray for a cigarette and trying to grab McCray's arm,[15] Defendants cannot be said to have participated in or caused the alleged harm subject of this complaint. Daniels points to no custom or policy created or endorsed by Defendants that caused a constitutional violation. In fact, the record completely lacks evidence of any constitutional violation. Consequently, Defendants should be granted summary judgment, and Plaintiff Daniels' claims against them dismissed with prejudice.

---

[15]     (*See* Doc. 23-1 at 1).

**IV.  Conclusion.**

Based upon the foregoing reasons, it is recommended that Defendants' Motions for Summary Judgment be GRANTED, and Plaintiff Daniels' action be DISMISSED with prejudice.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate

Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**ORDERED this 14th day of February, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**